Thank you, judges. My name is Steve Richard. I represent Randy Larson, who pled guilty to the crime of felon in possession and has been punished substantially and now sits in the Maximum Federal Bureau of Prisons facility in Florence, Colorado. When we filed this appeal of his sentence, it was done so before the decision of Asbury, which I'll comment on in just a moment. But since that time, I've struggled quite a bit with how to approach this appeal and this argument, and I'm still struggling with that because of the, I'll say substantial, Ninth Circuit decisions which are in the way. Well, they're kind of more than in the way. We're – I mean, my real question was, obviously, there's some tension among different judges as to whether that's the right kind of classification. But as a three-judge panel, we don't really have any leeway, if you want to put it that way, to do anything. So maybe you have, having thought about it, have a different way we can go about it and look at it. But it just seemed to me that we were pretty well bound by Granbois and these other cases. And, frankly, Judge, that may be very true. I do believe that the original Granbois decision was wrongly decided, but it's decided and it's controlling. As I think about where we're at with this, essentially what it kind of boils down to, at least in my mind, is if Mr. Larson's crime or any crime of sexual abuse of a minor or statutory rape is a per se violation or per se crime of violence, does the district court or the sentencing court then no longer apply Taylor? And Taylor would, the Supreme Court, as I understand it, would suggest or say to the district courts that in order to determine whether or not a sentencing enhancement, such as a prior crime, in this case a crime of violence or a statutory rape crime, if that is a sentencing enhancer, the court is to look at the judgment and then the court is to look at, and if that's not clear enough, the court should go a little bit beyond that. Maybe the charging document or whatever else is submitted as evidence or proof at trial. Well, let me just ask you something else. It seemed to me that we wouldn't go to Taylor, really. I mean, it would be categorized, so to speak, and then so you in effect are applying Taylor at the outset. But what you're really saying is this seems unfair. In part, but I think I'd go beyond that. Right. But so my question is, is, and maybe a district judge would agree with you, maybe not in terms of the overall scheme of things, is this a case in which there should be a limited remand for resentencing under Ameline and Booker, or was that expressly waived and your client doesn't want to take that option? We did waive the application of Booker as far, or excuse me, Blakely, as far as whether or not the judge will require a jury to make the factual determination. Yeah, but Booker came along later, and also did Ameline, and neither are mentioned in your briefs. Yeah. I mean, they're, they're obviously because even though you might waive Blakely, whether or not the guidelines are mandatory or advisory was something the judge obviously had no way to predict at that point. And in general, our practice has been that most of these cases are getting a limited remand. Now, that's not to say the judge always changes his or her mind, but that's been the practice generally, is to simply have a limited remand. And is that something that you're requesting on behalf of your client? We are requesting that. And just for clarification, at least in the reply brief that we filed, we mentioned that Booker does have an impact on the proceedings. I know, but you didn't ask for any Ameline relief. Are you saying you want an Ameline remand now? If that's appropriate, yes. Well, I guess if it's appropriate, it's sort of a, whether your client wants to go back and take a shot at another, another sentencing. And then the question is whether it's waived. I don't know if the government's position is on that. From our perspective, I don't think we have waived the application of Booker. At least we mentioned the impact of Booker. Specifically in the reply brief, we did not seek a limited remand, although that is a remedy that we would certainly welcome. The issue, as we see it, is whether or not all sex crimes are per se crimes of violence. And so does Taylor even apply anymore? And from our perspective, I think the court at the sentencing hearing has to have something other than a pre-sentence evaluation to say this is the prior conviction  In this case, there was no evidentiary submission to the district court upon which the court can even, I suppose, start a Taylor analysis because there's nothing there. And that gets me, I guess, to okay, if there's something submitted, required to be submitted to the court, say a judgment or something in addition to that, and it's a per se violation, does it matter if there's any fact or evidence submitted at all? It is one of those circles that I've yet to be able to address. We do request the court to consider, if appropriate, the analysis of Granbois and followed up with Hasbury as being faulty. The guidelines are different, but the Ninth Circuit has determined that they're not. Your remedy on that would be, assuming we're bound to follow the precedent which we are, would be to file a petition for rehearing and bank. Correct. Challenging our application. Correct. With that, unless the court has additional questions, I'll you. May it please the court, counsel, my name's Michael Feek on behalf of the United States. Like Mr. Richard, I was counsel of record before the district court in this case. This case arose out of a call that was placed to the Madison County Sheriff's Department, as the court knows, on September 9th of 2002, a report of a self-inflicted gunshot wound arising out of a domestic dispute. When officers arrived, as the court knows, they found a gunshot into the ceiling. Mr. Larson was present. After talking with Mr. Larson's girlfriend, they found out there had been a perpetratory domestic dispute with a physical altercation, and ultimately, they found several firearms in the home. With the court's permission, I'd like to first address an issue that was raised just a few moments ago with Mr. Richard, that the question of the application of Amoline and what the government's position would be. We concede, and in fact, this case was resolved during sort of that gray time when we had Booker, we didn't have Amoline, and quite honestly, as I'm sure Your Honors were, everybody was speculating on what direction we would go. During that time, as part of the pre-negotiations, Mr. Larson did waive his rights under Booker, however, wherein we didn't have Amoline. He raised his rights under Blakely. I'm sorry, correct, correct, Your Honor. It's easy to, we all do it. We do it all the time. Nevertheless, I can't stand before the court and say that he specifically, obviously, raised his, or waived his Amoline rights. To that respect, though, Your Honors, I'd like to directly address that issue and state, even with regard to whether the court would consider a limited remand under Amoline, as the court knows, even under Amoline, Amoline suggests that if the district court had a record and make a determination whether or not had the district court known of its ability to depart from the guidelines under Amoline, it would have. Here, we're focusing specifically on the issue of whether or not it was fair to punish Mr. Larson for having previously been convicted of a crime of, essentially, statutory right, whether or not that was fair to have that considered a crime of violence. And according to the record, we note that Judge Windmill grappled with that. In fact, at one point, he said, I scratched my head with regard to application of this issue. But then as he went on and ruled on this issue, he finally said, and I quote, it seems to me, and this is with regard to whether or not this type of statute would be a per se crime of violence. Judge Windmill says, and I quote, it seems to me that perhaps the courts have it right in concluding that such conduct inherently involves a serious potential risk of physical injury for a lot of different reasons. The courts can include injury to the child. It can include the sample for violence that may grow out of it. So in that regard, Your Honors, I would submit that while limited remand would be possible, in this case, the court can look to the record and I think the comments by the district court suggest that the guidelines are appropriate. What was the guideline range? Your Honor, I don't recall immediately. I know that Mr. Larson was ultimately, well, I'm sorry, Your Honor. He had 46 months. I think the guideline range is 46 to 57 months. I believe so, Your Honor. And that was as a result of, I believe, a six-point enhancement. I could be wrong, but a six-point enhancement as a result of the prior conviction being a crime of violence. Otherwise, it would have been a base level 14. I think that took it out of the room. But let me ask you this. He's grappling with it. Ultimately, he has to kind of come to a decision based on the precedent. Absolutely. But it's kind of a violence, so to speak, of a different nature, I think we all agree. It's of a different degree. It's not excusable, but it's of a different degree. So I guess the question would be, how could we know if, uncuffed from the guidelines and given, you know, free reign to do what makes sense, but consider the guidelines, how do we know they might not do something different? Well, I would suggest, Your Honor, and I guess what's the – you know, I'm not – we're not crazy about sending all these things back, believe me, because district judges have – gives them more work, and then they're going to come back up here, some of them on de novo review. So it's not like we – this is an exercise we love, but it's one the Supreme Court put us in. I'm just wondering here, as I read this, I'm not sure I could comfortably say that it would come out the same, although there's – it probably would. I understand, Your Honor, and I think my comment there would be, Judge – again, I refer back to Judge Windmill's initial comment, which I remember clearly being in the courtroom, and him saying, yeah, I scratched my head. I think Judge Windmill's comments in that regard reference some of – as the Court noted with regard to Mr. Richard, some of the tension amongst judges in this and other circuits as to whether or not they were going to categorize it as, per se, crimes of violence. And if we do, let's stop there, because I've had some trouble with this, too. We now have clear Ninth Circuit law, subject to an embank, which we're not having, that this conviction is a crime of violence. Correct. And even if the judge struggles and says, gee, I think the judge has got it right or wrong, he's not in a position to say that our law is wrong. So having said that, he has to deal with our law, and he now has in front of him a crime of violence. Correct. If we send it back, what does he do with that, even if the guidelines are discretionary? Well, I think then it refers back to – and again, I understand, and this is the line, is it puts this Court in the somewhat uncomfortable position of second-guessing district judge sort of in advance. I would submit, Your Honor, that in this case, Judge Winlow recognized the precedent and even still commented to the fact that, while I see some tension there, I think the courts have it right. This is a crime of violence. Now, I guess if we take it to the next level – well, that would be purely speculative on my part. Well, because in the cases that we've had to try to handle after Ammaline, the judges go, gee, I wish I didn't have the guidelines. Gee, I wish we didn't have a sentencing guideline. Gee, I wish I had a way to get around this for you. But gee, I'm locked up. My hands are tied. There's no discretion. Then we clearly say, hey, we've got to send it back because now he's got discretion. But if the judge – are you saying his comments would indicate that he agrees that it's a crime of violence, even though there's tension, he's a good – and, of course, that has to go to what discretion he may have or may not have. Certainly. Oh, I'm sorry. But there was another question that bothers me, and counsel could hear for Mr. Larson but it sounds like, and if I'm right reading the briefs, that the – Mr. Larson himself has never expressed anything with regard to Ammaline. Nothing's expressed in the briefs, and this morning we asked the question of counsel. Should we go forward unless we see an absolute expression formally from the – Mr. Larson on a limited remand? In other words, I think it's maybe only the person who's subject to sentencing who makes that decision to run the gauntlet again, I guess. I don't know. And, Your Honor, it raises an interesting philosophical point that I've had with many – or discussion that I've had with many defense counsels, which is, you know, in many cases, isn't it just good to – and I guess it sounds trite coming from a government attorney, but I truly believe that in some cases it may be better to let sleeping dogs lie, and Your Honor makes a good point. Sometimes – Well, I mean, for us to do it, I don't think it's appropriate. We had an odd case earlier this week where the government was saying leave it alone. It was at the lowest end of a mandatory minimum, and the defense counsel was saying send it back, and it could go up. So we've had some pretty odd interactions on this amyling. One way or another, it's in – you know, quite honestly, Your Honor, I've been before this Court before. We could argue, and as Your Honors know, the issue of where the guidelines came down, whether Judge Winmo sentenced at the high end, at the low end, ultimately, it becomes somewhat of a guessing game, and I concede that, but I think the point's well made that nevertheless, that initial sort of catalyst needs to be the defense saying we want to go forward in that regard. I do, with just a few seconds left, want to address the one issue, the first issue raised by the defense as to whether or not we should have presented the charging documents and simply reiterate my argument raised in my brief, which is, since this wasn't raised before the district court, plain error applies. And in this case, there was no – I see my time's up. May I finish my thought here, Your Honor? No, please. There was no contention to the fact that Mr. Larson was convicted of these crimes in Utah, that these crimes did involve a minor which, by definition in Utah, was a person under the age of 14, and by virtue of the conviction as a felony, it was – Mr. Larson was deemed to be four years the senior of the victim. So although the documents were never presented, I believe under the plain error standard, essentially, we go forward regardless. Thank you, Your Honor. Thank you. The question asked of Mr. Ficca, whether or not – and I suppose me, because I missed it – whether or not Mr. Larson personally has made a choice if he would be comfortable with a limited remand. Specifically, I don't – he has not done that. Practically, however, I would suggest that should the court be inclined to have a limited remand, that once it's backed before the district court, I think Mr. Larson at that point would have the ability to say, I don't want to. I don't think that's the way it works. In other words, I don't think we sua sponte do that. The question is, I think we have to be requested for the remand. We can ask you a question and say, would you like an ammaline remand and get a yes or no, but I don't think we sua sponte do that. And maybe I still misunderstood the question. I thought maybe the question was directed at, did Mr. Larson actually want to take the shot? Right. Well, it's his case, but we're not going to give it back to the district court and then let him decide then. In other words, if – let's say he doesn't want one, well, then we need to – the case should be closed at the appellate level without a remand. So if we think that a limited remand is mandated, even though he didn't specifically ask for it, and I don't know if we will, then we would be in touch and we would probably suspend the case for a short period so we could hear whether he wanted it or not. But if we decide that it's not merited, then we won't ask you that question. If it is, then we would, because we don't want this going back to the district court. The district court would think we were nuts, I think, if they sent it back and said, well, we don't know if he wants it or not. You have to ask him. So we would inquire of you to give us an answer on behalf of your client if we decide to go that route. And I can, at this point, say he wants to pursue this appeal in whatever remedy would be appropriate. He's fully aware of what we're doing and why. I suppose that my comment as to whether or not, once it gets back to district courthouse procedurally handled, Judge Windmill has, at least on one occasion on a limited remand, effectively sent out orders that if there's something more, let me know. Otherwise, I'm going to affirm the sentence. He effectively puts it back in our position as to make some showing. Otherwise, he's going to just go ahead and do, at least in this case that I'm referring to, he's going to do what he did before. That's simply the practical aspect of what Judge Windmill, from my experience, has done. We do request the Court to consider the application of Ameli. Any limited remand, with discretionary, if the judge has the discretion now to apply the guidelines, would he do the same? I don't know the answer to that. As Mr. Fieke indicated, the judge did seem to struggle a bit with the concept, came down saying that the courts were against us and made that rule. We request the Court's consideration. Thank you. Thank both counsel for your arguments. The case of United States v. Larson is submitted. It must be Idaho day because the next case is also from Idaho.
judges: Brunetti, McKeown, King